UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re* Petition of Tracy Korff, *et al.*,
*In the matter of*:

Case No. 16-cv-12984
Criminal Case No. 13-cr-20600

UNITED STATES OF AMERICA,

        Plaintiff,

v.

Paul D. Borman
United States District Judge

FARID FATA,

        Defendant.

_____/

OPINION AND ORDER GRANTING THE UNITED STATES' MOTION TO DISMISS THE
PETITION (ECF NO. 4) AND DISMISSING THE PETITION (ECF NO. 1)

On May 27, 2016, Petitioner Tracy Korff, Personal Representative of the Estate of John

Korff, filed this action individually and on behalf of 43 individuals involved in civil litigation in the

Oakland County Circuit Court, State of Michigan, against Farid Fata and several other allegedly

associated tortfeasors. The Petition is filed pursuant to 18 U.S.C. § 3771(d)(3), the Crimes Victims'

Rights Statute ("the CVRA"), and seeks to avoid potential claims for reimbursement by Medicare

and other health providers in relation to Petitioners' state court settlements against Fata and several

other tortfeasors. On July 1, 2016, the government filed a response and motion to dismiss the

Petition. (ECF No. 4.) The Petitioners filed a response to the motion to dismiss (ECF No. 6) and the

government filed a reply (ECF No. 9). On August 11, 2016, the Court permitted Petitioners to file

a supplemental brief. (ECF No. 12.) The Court held a hearing on Friday, August 19, 2016 and heard

extensive argument from both the Petitioners and the government. For the reasons that follow, the

Court GRANTS the government's motion to dismiss, DENIES the Petitioners' request for relief and

1

DISMISSES the Petition.

**INTRODUCTION**

This Petition is filed on behalf of 43 individuals currently involved in civil litigation in the Oakland County Circuit Court against Farid Fata, Crittenton Hospital Medical Center, McLaren Health Corporation and Trinity Health-Michigan, among other defendants, in which the Petitioners assert claims of medical malpractice arising out of Fata's admitted malfeasance in treating patients, conduct that is the subject of a criminal health care fraud proceeding against Fata in a separate action in this Court. *United States v. Farid Fata*, Case No. 13-cr-20600 ("the Fata criminal proceeding"). In this Fata criminal proceeding, the Court accepted Fata's pleas of guilty without benefit of a Rule 11 plea agreement and sentenced him to 45 years in prison.[1]  The Court, after holding three days of post-sentencing public hearings on the restitution issue, established an initial plan of restitution that provides for notice to all patient victims and establishes a process for the filing of claims by those victims.  (Fata criminal proceeding, ECF No. 186, Order Establishing Restitution Plan and Review of Claims for Restitution) ("the Restitution Order").   The Restitution Order defines certain categories of Fata's former patients' non-reimbursed, out-of-pocket medical expenses that will be compensable under the restitution plan with appropriate documentation.

Petitioners contend that their recently-completed $8 million settlement in their state court civil actions may subject them to federal statutory obligations to reimburse Medicare from those settlement awards for certain payments made by Medicare on their behalf (hereinafter the "medical expense or health care liens").  Petitioners acknowledge that this Court's Restitution Order allowing

---

[1] Fata plead guilty to charges arising in the Eastern District of Michigan.  The pleas of guilty were to Health Care Fraud, 18 U.S.C. § 1347, Conspiracy to Pay and Receive Kickbacks, 18 U.S.C. § 371, and Money Laundering, 18 U.S.C. § 1956(a)(1)(A)(i).

restitution only for non-reimbursed expenses "clearly prohibits Petitioner [Korff] from seeking restitution for monies that she is required to pay to satisfy the liens of Medicare, Medicaid or Blue Cross Blue Shield in the civil case." (Petition 3.) Petitioners assert that precluding restitution for these amounts victimizes the Petitioners and violates their rights as crime victims under the CVRA to receive full restitution and to be treated with respect and dignity.

Petitioners now ask this Court to "remedy" this alleged inequity by either: (1) ordering that Medicare (and/or other health care benefit programs) "waive off" Petitioners' medical expense liens that they may be statutorily obligated to pay from their settlement award in their state civil cases against Fata and other tortfeasors; or alternatively (2) modifying this Court's Restitution Order to remove the word "non-reimbursed," and/or deeming any payments that Petitioners are required to make from their settlement award to satisfy any medical expense liens in their underlying state civil actions as qualifying "out-of-pocket expenses" under the Court's Restitution Order.

The government opposes the Petition and moves to dismiss, arguing that: (1) Petitioners are asking this Court to relieve them of their reimbursement obligations under the Medicare laws but have failed to exhaust their administrative remedies under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b), (the "MSP") and thus this Court lacks subject matter jurisdiction over Petitioners' claims; and (2) assuming Petitioners do have standing in this Court, the relief requested by Petitioners that would require this Court to recharacterize their medical expense reimbursement payments as qualifying out-of-pocket expenses under the Court's Restitution Order (a) would violate the mandate of the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A ("the MVRA") that victims receive compensation only for actual and direct monetary loss and (b) would award the Petitioners a windfall recovery at the expense of the hundreds of Fata victims who have not filed and

settled individual civil actions and thus would not similarly be entitled to recover amounts from the restitution fund for "expenses" that they themselves did not pay.

## I.   FACTUAL BACKGROUND

In the Fata criminal proceeding, Fata, without benefit of a plea agreement, pleaded guilty to 13 counts of health care fraud, one count of conspiracy to pay and receive kickbacks, and two counts of money laundering. As part of a sentencing stipulation, Fata admitted that he had administered unnecessary medical treatments and testing, including dangerous chemotherapy and other chemical infusions, to at least 553 patients. On July 10, 2015, Fata was sentenced to 45 years' imprisonment.[2] A Judgment was issued and the determination of restitution to the victims of Fata's crimes under the MVRA was deferred to a later date. *United States of America v. Farid Fata*, No. 13-cr-20600 (E.D. Mich. July 14, 2015) (ECF No. 158, Judgment p. 6.) Fata stipulated to a Preliminary Order of Forfeiture that was entered by the Court on July 9, 2015, pursuant to which Fata agreed to forfeit his rights to certain property and further agreed to a money judgment of $17,601,233.00, "representing the amount of gross proceeds obtained as a result of [his] health care fraud violations as alleged in the Fourth Superseding Indictment." (E.D. Mich. No. 13-cr-20600, ECF No. 154, Preliminary Order of Forfeiture.) Presently, the restitution fund stands at approximately $12 million after liquidation and a 10% payment to a whistleblower.

Typically, forfeited funds are deposited directly in the Treasury of United States, absent special agreement from the Asset Forfeiture and Money Laundering Section ("AFMLS") of the Criminal Division of the Department of Justice. The Department of Justice may, however, in its

---

[2] Fata's 45-year sentence was affirmed on appeal in all respects. *United States of America v. Fata*, No. 15-1935, __F. App'x__, 2016 WL 3000349 (6th Cir. May 25, 2016).

discretion, transfer "forfeited assets to restitution where the defendant does not have sufficient resources to pay restitution outside of the forfeited assets."  Catharine M. Goodwin, Federal Criminal Restitution, § 12:13 (2014 Edition). Working extensively with AFMLS, the government obtained the authorization to create a restitution plan in the Fata criminal proceeding that seeks to apply the full amount of the forfeited funds to restitution for individual victims of Fata's crimes. The government estimates that after liquidation and payment to a *qui tam* relator, approximately $12 million will be available for restitution.

Under the Restitution Order entered by this Court on April 11, 2016, three different categories of restitution will be available to Fata patient-victims: (1) all non-reimbursed, out-of-pocket medical expenses paid by any former patient for medical services provided by Fata or at his direction; (2) all non-reimbursed, out-of-pocket medical expenses for remedial measures that were incurred as a result of any inappropriate or unnecessary treatments ordered or provided by Fata; and (3) all non-reimbursed, out-of-pocket expenses for psychological and psychiatric mental health treatment and prescription mental health medications.  Each of the three categories of expenses that will be available to the patient victims requires differing levels of supporting documentation but, in each case, restitution is available only for *non-reimbursed, out-of-pocket* expenses.  If any portion of a patient-victim's medical expenses have been paid by another payer, such amounts are not available for recoupment by the patient-victim under the restitution plan.

It is undisputed that some portion of Petitioners' medical expenses were paid on their behalf by certain medical lien holders, and the Petitioners represent that they will be statutorily obligated to reimburse those medical lien holders out of their settlement awards.  Petitioners concede that such reimbursements, which they will be required to make from the money that they receive from the

various tortfeasors in their state court suits, are not non-reimbursed, out of pocket expenses that may be recouped under the Restitution Order.  Petitioners, however, believe they are entitled to recover those reimbursement payments again from the restitution fund in the criminal proceedings and seek a ruling from this Court that would enable them to do so.  For the reasons that follow, the Court denies the relief Petitioners request and dismisses the Petition.

## II.      STANDARD OF REVIEW

The government does not cite any particular statute or court rule under which it moves to dismiss, but its claim that Petitioners failed to exhaust their administrative remedies with respect to their Medicare liens and that therefore the Court lacks subject matter jurisdiction over Petitioners' claim presumably is asserted under Federal Rule of Civil Procedure 12(b)(1).  Federal courts derive their jurisdictional power to hear cases and controversies from Article III of the Federal Constitution. It is axiomatic that a court must have subject matter jurisdiction over a controversy before it can render any decision on the merits.  The party invoking federal subject matter jurisdiction bears the burden of proving it.  *Dismas Charities, Inc. v. U.S. Dept of Justice*, 401 F.3d 666, 671 (6th Cir. 2005). Challenges to subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) "come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prod., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Under a facial attack, all of the allegations in the complaint must be taken as true, much as with a Rule 12(b)(6) motion.  *Gentek*, 491 F.3d at 330 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).  Under a factual attack, however, the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction. "Where the defendant brings a factual attack on the subject matter jurisdiction, no presumption of truth applies to the allegations contained in the pleadings, and

the court may consider documentary evidence in conducting its review." *Id.* "If the district court must weigh conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist, it has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id.*"

To the extent that the government moves to dismiss "alternatively" on the basis that the "substance of the Petition's arguments is equally unsound," *see* Mot. at 18, the Court construes the motion as one to dismiss under Fed. R. Civ. P. 12(b)(6). *See Jordan v. Dept of Justice*, __F.Supp.3d__, 2016 WL 1271070, at *3 (S.D.N.Y. March 29, 2016) (analyzing government's motion to dismiss plaintiff's petition to enforce her rights under the CVRA under 12(b)(6)). When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (internal citations omitted). Dismissal is appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation

7

or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 127 S.Ct. at 1965). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969).

## III.   ANALYSIS

### A.   This Court Lacks Subject Matter Jurisdiction Over Those Claims in the Petition That Necessarily Would Require Interpretation and Application of the MSP

The government argues that regardless of how Petitioners choose to characterize their claim, in essence they seek to avoid their legal obligations under the Medicare Secondary Payer ("MSP") provisions of the Social Security Act, 42 U.S.C. § 1395y(b), to reimburse Medicare for medical expenses that Medicare has paid on their behalf. The government argues that the MSP has strict presentment and exhaustion requirements with which Petitioners have failed to comply and therefore the Court lacks subject matter jurisdiction over their claims.

Under the MSP, Medicare is a secondary source of payment and may make a "conditional payment . . . if a primary plan . . . has not made or cannot reasonably be expected to make payment . . . promptly . . . ." 42 U.S.C. § 1395y(b)(2)(B)(i). "Any such payment by the Secretary shall be conditioned on reimbursement to the appropriate Trust Fund . . . ." *Id.* Thus, Medicare becomes obligated as a secondary payer only when a "primary plan" has not or cannot promptly pay a claim and expressly reserves the right to reimbursement from "a primary plan, *and [from] an entity that receives payment from a primary plan*." 42 U.S.C. § 1395y(b)(2), and (b)(2)(B)(ii) (emphasis added).

8

A tortfeasor against whom a judgment is rendered or settlement obtained, such as Fata in a successful medical malpractice action, is considered a "primary payer" under the MSP. *See Hadden v. United States*, 661 F.3d 298, 300 (6th Cir. 2011) ("Federal law aims to make Medicare only a 'secondary payer' as to medical expenses for which some other entity (e.g., a tortfeasor) bears responsibility.") (quoting 42 U.S.C. § 1395y(b)(2)); *Anderson v. Burwell*, __F. Supp. 3d__, 2016 WL 827368, at *8 (E.D. Mich. Mar. 3, 2016) ("If a Medicare beneficiary seeks medical expenses as damages in a lawsuit, and the parties settle the claim, the settlement demonstrates the tortfeasor's responsibility for those medical expenses . . . [and if] the tortfeasor directly pays the settlement proceeds to the Medicare beneficiary, Medicare may seek reimbursement from the beneficiary."). A successful plaintiff in such a civil action, who receives a judgment or a settlement, is thus "an entity that receives payment from a primary plan," e.g. the tortfeasor. *See* 42 C.F.R. 411.22 (a "primary payer, and an entity that receives payment from a primary payer, must reimburse CMS for any payment if it is demonstrated that the primary payer has or had a responsibility to make payment," which responsibility may be demonstrated by a judgment, or a payment conditioned on a release (even absent a finding of liability) of claims of payment for services included in a claim against the primary payer or the primary payer's insured, or by any other means including but not limited to a settlement, award or contractual obligation).

The United States may bring an action against "any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity." 42 U.S.C. § 1395y(b)(2)(B)(iii). These provisions of the MSP thus operate in part "to prevent responsible tortfeasors or recovering plaintiff/beneficiaries from retaining the medical expenses paid by Medicare." *Burwell*, 2016 WL 827368, at *8 (internal quotation marks and citation omitted). When

9

a primary payment is received as the result of a settlement or judgment, "Medicare reduces its recovery to take account of the cost of procuring the judgment or settlement," if the procurement costs are incurred because the claim is disputed and the costs are borne by the party against whom recovery is sought.  42 C.F.R. § 411.37.  The procurement provisions generally result in a Medicare recovery below the amount of the lien.

The MSP contains a "in the best interests of the Medicare program" waiver provision, *see* 42 U.S.C. § 1395y(b)(2)(B)(v), under which the government "may waive (in whole or in part) the provisions of [the MSP] in the case of an individual claim if the Secretary determines that the waiver is in the best interests of the [Medicare] program . . . ." (alterations added).  Additionally, the MSP provides for a hardship waiver, 42 U.S.C. § 1395gg(c), where collection 'would defeat the purposes of the Medicare Act or would be against equity and good conscience.'"  *Walters v. Leavitt*, 376 F. Supp. 2d 746, 756 (E.D. Mich. 2005) (quoting *Cochran v. U.S. Health Care Financing Admin.*, 291 F.3d 775, 779 (3d Cir. 2002)) (quoting 42 U.S.C. § 1395gg(c)).

"Judicial review of claims arising under the Medicare Act is available only after the Secretary renders a "final decision" on the claim, in the same manner as is provided in 42 U.S.C. § 405(g) for old age and disability claims arising under Title II of the Social Security Act."  *Heckler v. Ringer*, 466 U.S. 602, 605 (2013) (citing 42 U.S.C. § 1395ff(b)(1)(C)).   The Sixth Circuit has recognized this important limitation on judicial review of final decisions of the Secretary of HHS on Medicare claims:

> 42 U.S.C. § 1395ff(b)(1)(A) provides the jurisdictional basis for judicial review of a final decision of the Secretary on a Medicare Part B claim. It states that "any individual dissatisfied ... [with a determination] shall be entitled to ... judicial review of the Secretary's final decision after [a] hearing as is provided in section 405(g) of this title." Section 405(g) states in relevant part that "Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party ... may

obtain a review of such decision by a civil action...."

*Southern Rehabilitation Grp., P.L.L.C. v. Sec'y of Health and Human Servs*., 732 F.3d 670, 677 (6th Cir. 2013). "Section 405(g) has been interpreted to contain two prerequisites to judicial review. First, a 'nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court.' Second, a waivable requirement of exhaustion of administrative review." *Id*. at 678 (quoting *Shalala v. Ill. Council on Long Term Care, Inc*., 529 U.S. 1, 15, 26). *See also Bird v. Thompson*, 315 F. Supp. 2d 369, 374 (S.D.N.Y. 2003) (noting that "[t]he "final decision" requirement consists of two elements, one of which is waivable, and one of which is jurisdictional and nonwaivable," observing that "'[Section] 405(g) contains the nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court.'") (quoting *Illinois Council*, 529 U.S. at 15) (first alteration added).

"The Medicare Act also expressly adopts the Social Security Act's jurisdictional bar to judicial review found at 42 U.S.C. § 405(h). *See* 42 U.S.C. § 1395ii ("The provisions of ... subsection ... (h) ... of section 405 of this title shall also apply with respect to this subchapter....")." *Southern Rehabilitation,* 732 F.3d at 678 (alterations in original). "Section 405(h) channels most, if not all, Medicare claims through [the] special review system of an administrative hearing and purports to make exclusive the judicial review method set forth in 405(g)." *Id*. at 678 (internal quotation marks and citations omitted) (alteration in original).

A claim "arises under" the Medicare Act if "both the standing and the substantive basis" for the presentation of the claim are provided by the Medicare Act or if the claim is "inextricably intertwined with a claim for medical benefits under the Medicare Act." *Bird*, 315 F. Supp. 2d at 372 (holding that a challenge to Medicare's right to reimbursement under the MSP from plaintiff's

11

settlement from a tortfeasor's insurance company, which involved benefits that had been conditionally paid on plaintiff's behalf and required an interpretation of the substantive provisions of the MSP,  was a claim "arising under" the Medicare Act) (citing *Heckler*, 466 U.S. at 614-15). *See also Leavitt*, 376 F. Supp. 2d at 755.  This is true even if the Constitution or another statute also provides a substantive basis for a claim.  *Heckler*, 466 U.S. at 614 (finding that medicare claimants challenging the policy of the Secretary of HHS with regard to payment of benefits for particular surgical procedures, which sought only declaratory and injunctive relief, was a claim "arising under" the social security act, and demanded administrative exhaustion, even though "it was in one sense also a claim arising under the Constitution").  Where "[t]he merits of Plaintiffs' claims necessarily turn on the interpretation of the Medicare Act's secondary payer provisions," the claim "arises under" the Medicare Act.  *Potts v. Rawlings Co.,* 897 F. Supp. 2d 185, 194 (S.D.N.Y. 2012).

The Sixth Circuit summarized the effect of these provisions and constraints on judicial review in *Southern Rehabilitation*:

> In sum, Congress provided a limited waiver of sovereign immunity in the Medicare Act by permitting claimants to file civil actions seeking judicial review of the Secretary's final decision. However, Congress conditioned that waiver on several elements: (1) claimants are required to have presented their claims to the Secretary; (2) claimants must exhaust their administrative remedies resulting in a final decision; and (3) claimants are barred from raising federal question claims that are "inextricably intertwined" with their claim for benefits.

732 F.3d at 678.

Petitioners do not dispute the applicability of the mandatory provisions and requirements of the MSP to the medical liens of the 14 Petitioners.  Indeed they state that that: "The United States argues that Medicare has a right to reimbursement, a fact that Petitioner does not deny."  Petitioners' Reply 5.  At the hearing on the motion to dismiss the Petition, the Petitioners conceded that Medicare

12

claims for reimbursement in tort cases happen "every day of the week," and that the claims for reimbursement as to the 14 Medicare liens at issue in the civil litigation would be "perfectly appropriate" in the typical tort case "absolutely no question about it."

Nor do Petitioners dispute that the MSP requires presentment and exhaustion of administrative remedies and  that they have failed to exhaust those remedies here, a fact rendered beyond dispute given that no Medicare claims for reimbursement have actually been made in the civil litigation. Petitioners half-heartedly suggest that exceptions to the exhaustion requirement exist when it can be shown that the administrative body "is biased or has otherwise predetermined the issue before it."  Reply at 7.  But beyond stating that this exception exists, and that the government should "recluse" [sic] itself, Petitioners make no effort to demonstrate how such an exception would apply here.

Despite acknowledging that their settlement awards render them subject to the MSP reimbursement obligations, Petitioners request that the Court order "the Department of Health and Human Services or the Centers for Medicare Medicaid Services" to "simply waive off" their liens against these 14 individuals.  In response to the Court's questioning whether Petitioners had filed an administrative claim with Medicare to request such a waiver, Petitioners responded that "we aren't there yet," because such claims are handled on an individual basis after a demand for reimbursement has been presented which, of course, has not yet occurred with respect to the medical liens of the 14 Petitioners involved in the civil litigation who only anticipate such requests.

Petitioners proffer another possible (but related) form of relief: a ruling from this Court ordering a "global" waiver for all the Medicare liens connected to the civil litigation.  As precedent for this request, Petitioners attached to their Supplemental Brief an email exchange from an

13

individual at CMS regarding such a waiver that apparently was granted in regard to certain settlements that resulted form the September 11, 2001 World Trade Center bombings. That email explains: "In accordance with her discretionary authority to issue a 'best interests of the [Medicare] program' waiver under Section 1862(b)(2)(B)(v) of the Social Security Act, the Secretary determined that it was in the best interest of the Medicare program for the Centers for Medicare Medicaid Services (CMS) to waive its Medicare Secondary Payer (MSP) recovery claims against certain settlements obtained by first responders and other victims related to the September 11, 2001 terrorist attacks on the World Trade Center in New York City." (ECF No. 12, Ex. 1, July 29, 2016 email from Sherri McQueen of CMS).[3] The email further explains that the "Secretary has not employed such authority since." *Id*.

The 911 case demonstrates that the decision to "waive off" Petitioners' Medicare liens is one to be made in the first instance not by this Court but by the administrative body solely empowered to evaluate the request and make that call. The inescapable conclusion with respect to both of these requested forms of relief is that they present claims "arising under" the MSP that would necessarily require this Court to interpret and apply the provisions of the MSP. In essence, Petitioners request the Court to make a determination of hardship, a decision expressly reserved under the MSP to the Secretary of HHS under 42 U.S.C. § 1395y(b)(2)(B)(v) or to CMS under 42 U.S.C. § 1395gg(c). While CMS has "broad discretion" to waive its right to payment under the MSP "when pursuing it 'would defeat the purposes of the Medicare or Social Security Act or would be against equity and

---

[3] The MSP provisions, *see generally* 42 U.S.C. § 1395y(b), are also referred to as Section 1862(b) of the Social Security Act. Thus, 42 U.S.C. § 1395y(b)(2)(B)(v), the hardship waiver under the MSP, is the same provision referred to in the email as "Section 1862(b)(2)(B)(v) of the Social Security Act."

good conscience,'" the administrative presentment and exhaustion requirements demand that Petitioners "'would first have to request that the agency exercise its discretion to waive its right to collect from the proceeds of [their] tort suit the medical expenses it had paid on her behalf.'" *Leavitt*, 376 F. Supp. 2d at 746 (quoting *Cochran*, 291 F.3d at 779) (alteration added). Ultimately, judicial review is available in this Court if Petitioners are dissatisfied with the relief they receive at the agency level. *Burwell*, 2016 WL 827368, at *12 (upholding Medicare Appeals Council decision requiring reimbursement of MSP payments from state court settlement as supported by substantial evidence).

The MSP presentment and exhaustion requirements cannot be avoided simply because Petitioners profess to present their claims under a different statute, the CVRA. Any claims Petitioners make seeking to "waive off" their Medicare lien obligations require presentment and exhaustion of remedies, neither of which has occurred here. Accordingly, the Court lacks subject matter jurisdiction over claims that would require the Court deem Petitioners' obligations under the MSP waived.

### B. Petitioners are Not Entitled to the Relief They Seek Under the CVRA.

Petitioners claim that the government improperly directs the Court's attention to the MSP when, they insist, they have filed their Petition not under the MSP but under the CVRA, seeking injunctive or declaratory relief. Petitioners propose that as an alternative to the Court "ordering" the lien waivers, discussed *supra*, the Petitioners would satisfy their medical lien obligations to Medicare out of their settlement awards, as those amounts become finally determined in the civil litigation proceeding, if this Court will modify the Restitution Order it has entered in this case to "remove the word non-reimburs[ed]" or simply declare their Medicare repayments to be "out of

pocket reimbursable expenses," so that the 14 Petitioners with Medicare lien obligations can again recoup their Medicare reimbursement payments in this Court's restitution proceeding. The government responds that this claim too arises under the MSP and that Petitioners cannot sidestep the administrative scheme simply by stating that the claims arise under some other statute. Thus, the government concludes, this Court lacks jurisdiction to resolve the claim asserted under the CVRA. Alternatively, the government responds, even assuming the Court can properly exercise jurisdiction under the CVRA over Petitioners' claim, the claim lacks substantive merit.

The CVRA accords victims of crimes various rights, including the right to notice of proceedings involving the crimes, the right to be reasonably heard at such proceedings, the right to receive full and timely restitution, the right to be treated fairly and with respect for their dignity and privacy, and the right to be informed of their rights under the CVRA. 18 U.S.C. § 3771(a)(1)-(10). "These rights may be enforced by the victim or the victim's representative, or the government." Goodwin, Federal Criminal Restitution § 11:10 (citing 18 U.S.C. § 3771(d)(1)). The rights described in Section 3771(a) "shall be asserted in the district court in which a defendant is being prosecuted for the crime," and the "district court shall take up and decide any motion asserting a victim's right forthwith." 18 U.S.C. § 3771(d)(3). "If the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus." *Id*. The CVRA expressly provides, however, that it does not authorize an independent cause of action for damages. 18 U.S.C. § 3771(d)(6).

"On its face, the Crime Victims' Rights Act (CVRA) does not directly affect the determination of restitution under the restitution statutes and resulting case law. However, it can provide the procedural means for victims to challenge restitution law, and can affect how the court

receives information about victims and their harms."  Goodwin, Federal Criminal Restitution § 11.11 (footnote omitted).  Through its mandate that the victim has a right to "full and timely restitution as provided in law," and its declaration that the CVRA "does not affect the victim's right to restitution as provided in title 18, United States Code," the CVRA seeks to further the purpose of the MVRA (18 U.S.C. § 3663A), under which the Court has ordered restitution in this case.  *Id.*  *See also United States v. Atlantic States Cast Iron Pipe Co.*, 612 F. Supp. 2d 453, 458 (D. N. J. 2009) (noting that "[a]lthough the CVRA provides the vehicle for [a petitioner] to assert her right to restitution, it does not create an independent obligation for a district court to order or a defendant to pay such an award. . . . Rather, the CVRA merely protects the right to receive restitution that is provided for elsewhere") (internal quotation marks and citation omitted) (alterations in original).

Both the CVRA and the MVRA contain provisions granting the court discretion, in cases involving multiple victims, to restrict the availability of full restitution.  The MVRA provides that a court is not obligated to order restitution if it finds that:  (1) "the number of identifiable victims is so large as to make restitution impracticable," or (2) "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process."  18 U.S.C. § 3663A(c)(3).  *See also* 18 U.S.C. § 3663(a)(1)(B)(ii) (providing that "to the extent that the court determines that complications and prolongation of the sentencing process resulting from the fashioning of an order of restitution . . . outweighs the need to provide restitution to any victims, the court may decline to make such an order").  Likewise, the CVRA contains the following "multiple crime victims" provision: "In a case where the court finds that the number of crime victims makes it impracticable to accord all of the crime victims the rights

17

described in subsection (a), the court shall fashion a reasonable procedure to give effect to this chapter that does not unduly complicate or prolong the proceedings." 18 U.S.C. § 3771(d)(2).  Thus, in a multiple crime victim case such as this, the Court has discretion to order less than full restitution and to accord fewer than all of the rights listed in § 3771(a)(1)-(10).  *See also In re W.R. Huff Mgt. Co., LLC*, 409 F.3d 555, 564 (2d Cir. 2005) (upholding district court's restitution order that allegedly failed to compensate all victims, observing that the court had appropriately considered the numerosity of victims and the prospect of delay in sentencing in arriving at a restitution plan).

In this Court's Restitution Order, after holding multiple public hearings on the issue of restitution (of which these Petitioners received notice), this Court approved a plan and invoked the complication provision of the MVRA to conclude that areas of restitution that might otherwise be available to victims of Fata's crimes were not included in the plan due to the delay and expense that would be involved in determining the cause and amount of each victim's loss were the plan to include categories of loss other than those approved in the Restitution Order.  (ECF No. 186, Restitution Order.)  Many factors informed the Court's decision to approve a plan that limited the categories of compensable losses in this case, including the fact that the government had diligently worked to create and preserve the restitution fund by: (1) obtaining concessions from AFMLS with regard to utilizing the full amount of the forfeited funds, which were obtained as the result of the health care fraud conviction, for restitution; and (2) obtaining funding from the government (not from the forfeited funds used for restitution) for the claims process, specifically to bear the cost of Ms. Roth's work as the Claims Facilitator.  Similarly, the Court concluded that attempting to include categories of a patient victim's loss beyond those ultimately agreed upon in the plan would have presented impossibly complicated issues in attempting to determine the cause and amount of

18

individual victim's losses in those other categories.

The Court's Restitution Order sets forth a detailed claims process and the Court has approved Ms. Randi Roth as a Claims Facilitator for that process. The Court will establish a separate process for a claimant to appeal a decision of the Claims Facilitator to the Court. Only if amounts remain in the restitution fund after all patient victims have been compensated under the claims process will any funds be available for other victims of Fata's crimes, i.e. private, non-patient victims (health care benefit programs) and government victims (Medicare). The government will be last in line and will recover only after private individuals and entities have received the full measure of their restitution. Indeed, such a sequencing of restitution is required by the MVRA. *See* 18 U.S.C. § 3664(i) ("In any case in which the United States is a victim, the court shall ensure that all other victims receive full restitution before the United States receives any restitution."). The goal of the restitution plan approved by the Court is to pay as much, if not all, of Fata's assets to individual victims.

Petitioners challenge the limitation imposed in the Restitution Order to payment of claims only for *non-reimbursed, out-of-pocket* expenses. Such a limitation, however, is consistent with the mandate of the MVRA, which permits restitution only for actual non-compensated losses that flow directly from the crime. The "purpose of restitution is not to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses." *United States v. Martin*, 803 F.3d 581, 594 (11th Cir. 2015) (internal quotation marks and citation omitted) (citing *Hughey v. United States*, 495 U.S. 411, 416 (1990) ("[T]he ordinary meaning of "restitution" is restoring someone to a position he occupied before a particular event.")). "Thus, the amount of restitution owed to each victim must be based on the amount of loss *actually*

19

caused by the defendant's conduct." *Martin*, 803 F.3d at 595 (internal quotation marks and citation omitted) (emphasis in original).

This overarching limitation to out-of-pocket, non-reimbursed costs is expressed in several provisions of the MVRA.  For example, 18 U.S.C. § 3663A(b)(2) limits recovery to actual monetary losses, providing for payment of amounts "equal to the cost of necessary medical and related professional services."[4]   And 18 U.S.C. § 3664(j)(2) prevents double recovery by disallowing restitution for a loss that is compensated by some other source, providing that "any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in . . . any State civil proceeding . . . ."[5] Petitioners will have been "compensated" by the tortfeasors in their civil law suits for amounts they are required to reimburse to Medicare; indeed, as discussed *infra*, those portions of their state court

---

[4]  18 U.S.C. § 3663A(b) provides in relevant part:
> (b) The order of restitution shall require that such defendant–
>> (2) in the case of an offense resulting in bodily injury to a victim--
>>> (A) pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;
>>> (B) pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and
>>> (C) reimburse the victim for income lost by such victim as a result of such offense;
>> (3) in the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services.

[5]  18 U.S.C. § 3664(j) provides in relevant part:
> (2) Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in--
>> (A) any Federal civil proceeding; and
>> (B) any State civil proceeding, to the extent provided by the law of the State.

settlements that represent recovery for medical expenses that Medicare long ago paid on their behalf are due and owing to Medicare upon Petitioners' receipt of such amounts, and Petitioners are statutorily obligated to permit such funds to pass through from the primary payer (the tortfeasor) to the secondary payer (Medicare).  After "satisfying" their medical lien obligations from their state court settlement, Petitioners will be in the same position as the hundreds of other Fata victims who had such amounts paid on their behalf: without an actual monetary out of pocket loss with respect to those payments.  Nothing more is required, with regard to these MSP reimbursements, to "restore" Petitioners to the financial position they enjoyed prior to receiving their medical treatments from Fata.  *See United States v. McDaniel*, 398 F.3d 540, 554-55 (6th Cir. 2005) (noting that "the restitution statutes do not permit victims to obtain multiple recoveries for the same loss" and instructing district court on remand "that in no case" should restitution payments be made to any victims who have already been fully compensated for their losses in state court actions).  Neither the letter nor the spirit of the MVRA requires that Petitioners be permitted to recover the MSP amounts again through the restitution process in the criminal proceeding, because those amounts are not a "cost" or a "loss" to the Petitioners!  Further, as discussed *infra*, under the circumstances of this case, to permit this select group of state court civil litigants such a recovery would inequitably diminish the restitution funds available for those hundreds of Fata victims who *did not have* the benefit of a state court civil settlement in their favor but who *do have* legitimate actual non-reimbursed out of pocket losses for which they deserve to be made whole.

Petitioners next assert that requiring the Petitioners to satisfy their Medicare lien obligations out of their state court settlement and disallowing recovery for those same reimbursed amounts in this Court's restitution proceeding violates that mandate of the MVRA that the government must be

the last victim in line to receive criminal restitution.  *See* 18 U.S.C. § 3664(i) ("In any case in which the United States is a victim, the court shall ensure that all other victims receive full restitution before the United States receives any restitution.").  *See also United States v. Williams*, 612 F.3d 500, 510 (6th Cir. 2010) ("In cases where the United States is a victim, "the court shall ensure that all other victims receive full restitution before the United States receives any restitution.") (citing § 3664(i)).  Petitioners argue that precluding them from seeking recovery for their Medicare reimbursements a second time from the criminal restitution fund penalizes them and moves the government ahead of the patient victims in the order of priority for receipt of restitution in contravention of this mandate.

　　As an initial matter, it is worth pausing here to recall that the restitution fund exists in this case because the government elected to turn over all of Fata's forfeited assets for purposes of restitution to Fata's victims, a decision it was not obligated to make.  And in taking on the financial obligation (independent of the forfeited funds) to pay for the complex claims processing, including payment for Ms. Roth's salary, the government has further contributed to preservation of the restitution fund.  Finally, it is acknowledged that, given the sheer number of victims and the size of the claims of the private insurers (Blue Cross reportedly has a stipulated $7 million loss), the government stands to recover little or more likely nothing as a victim of Fata's crimes.  But putting aside these realities, the fact is that the money that Petitioners receive from their state court settlements are not criminal restitution funds – they are civil settlement awards compensating Petitioners at least in part for the very same medical expenses (which Petitioners were never called upon to pay in the first place) for which Petitioners would seek to recover again in the criminal restitution proceeding.  Moreover, the lien reimbursement payments they may be required to make

to reimburse Medicare are not direct payments for medical expenses they incurred for treatment. Those medical expenses were paid long ago by Medicare as a secondary payer. The payments Petitioners may be required to make out of their settlement awards are reimbursement to Medicare for money it laid out long ago on Petitioners' behalf. And those monies, that were paid by Medicare on Petitioners' behalf, are statutorily required to be repaid to Medicare from Petitioners' settlements under the MSP. Thus, permitting Medicare to recover Petitioners' MSP reimbursements from their settlement awards does not move the government ahead of the private patient victims for recovery from the restitution fund created in this Court as a result of the government's criminal health care prosecution.

An additional point that has been raised by the government, and that has received no adequate response from Petitioners, is that the state court litigation settlement involves multiple tortfeasors in addition to Fata. The government argues that because the majority of Fata's assets have been forfeited in the criminal proceeding, it is likely that the bulk of the settlement payment in state court action came from non-Fata defendants. Petitioners have not disputed this suggestion and offer no basis for determining which portion of the settlement was paid by Fata as distinct from the other tortfeasors, such as Crittenton Hospital Medical Center, McLaren Health Care Corporation, Trinity Health. Medicare's recovery of conditional payments from these entities could not possibly be considered as offsets to Fata's restitution payments to Medicare, yet Petitioners offer the Court no basis for making such a critical determination.

Petitioners have not persuaded the Court that, under the particular circumstances of this case, allowing Medicare to enforce its rights under the MSP runs afoul of the mandate of the MVRA that the government be last in line to recover from the restitution fund that resulted from Fata's criminal

health care prosecution.  The restitution fund in the Fata criminal proceeding was created only by the voluntary action of the government in electing to apply all of the forfeited funds it obtained in the criminal proceeding to restitution for Fata's victims – a decision the government made with the knowledge that it was unlikely to benefit from that restitution fund after all private victims had been compensated.  The Court is confident that the claims process will achieve the goal of paying most, if not all, of Fata's assets to individual and private Fata victims.

Petitioners argue (perhaps alternatively although this is unclear) that when they receive the settlement monies that they anticipate from their civil actions, some of which they acknowledge they will be obligated to use to reimburse Medicare and other medical expense lien holders, that settlement money will first "go into their pockets," will become their property and therefore any amounts that they are required to pay as reimbursement of the medical liens will be expenses paid "out of their pocket" that they should be entitled to claim in the restitution process established by this Court.  Petitioners  argue that "Medicare does not have a property right to the funds a Plaintiff receives from a tort settlement, only a right to recover its conditional payment from the Plaintiff," and therefore reimbursement payments come directly "out of their pockets."  Petitioners offer no statute or case or even general principle of law to support this conclusion, which in any event ignores the basic fact that Medicare made payments on Petitioners' behalf that were expressly "conditioned on reimbursement" to Medicare and that the government has a *direct* right to recover such payments.  *Hadden*, 661 F.3d at 304 (holding that Medicare's right to reimbursement from *any entity* that has received payment from a primary payer, including by way of a judgment or settlement in a medical malpractice action, is direct and "not encumbered by any of the subrogation baggage that might (or might not) weigh down an action" to enforce subrogation rights).  Petitioners offer

24

no support for the notion that the money paid in settlement can be found "in Petitioners' pockets" and that Medicare enjoys only a "conditional" right to repayment.[6]   There are no conditions on Medicare's right to recover, which is direct and unqualified.  *See Taransky v. Sec'y of U.S. Dept. of Health and Human Servs.*, 760 F.3d 307, 317 (3d Cir. 2014) (holding that "because of [the MSP] reimbursement right," a tort claimant whose medical expenses have been provisionally paid by Medicare could recover such expenses in her state court tort suit because she "could not pocket" those expense recoveries, which she was obligated to pass on to Medicare and hence she would not obtain a double recovery).

This is a complicated and horrific criminal case with over 550 identified victims.  The Court has invested significant time, held multiple public hearings and considered a multitude of competing factors in fashioning what it believes is a fair and equitable restitution plan that puts Fata's patient victims first in line to receive full restitution for their actual non-reimbursed, out-of-pocket medical expenses.  Petitioners' claims do not involve a challenge to the amount of restitution that Fata will be required to pay – that has been established.  Rather, Petitioners' claims involve a challenge to the type of loss that will qualify for restitution and ultimately to the equitable distribution of a limited restitution fund that must satisfy the claims a large number of victims.  The Petitioners represent only a small fraction of Fata's patient-victims but the relief they seek would put them in a position to recover a disproportionate share of the limited restitution fund.  Petitioners represented to the Court that 14 of the Petitioners have known Medicare liens that total approximately $587,758.00 and

_____

[6] Indeed, Petitioners' counsel explained to the Court at the hearing that the settlement funds are not immediately made available to the Petitioners but are held back while a claims administrator goes through a complicated process of determining how much of the settlement recovery must be directly paid to Medicare and other health care lien holders.  Thus, the medical lien reimbursement amounts never make it "into Petitioners' pockets" in the first place.

that the total outstanding health care reimbursement claims against the 43 Petitioners, including the claims of private health insurers, amounts to about $7 million.  Permitting this small subset of Fata's victims (about 8.6% of the 553 *identified* victims) to receive a disproportionately large share of the restitution fund to reimburse "losses" that they were never actually required to pay (or for which they have been compensated through their state court settlements), thus diminishing the amount of restitution available for the rest of Fata's victims with real out of pocket, non-reimbursed medical expenses, who did not pursue state court settlements, presents an intolerable inequity.

Petitioners have not demonstrated that their right "to full and timely restitution," or their right  "to be treated with fairness and respect for [their] dignity and privacy," or their "right to be informed of their rights" under the CVRA, all of which are rights guaranteed to them as victims of Fata's crimes, *see* 18 U.S.C. §§ 3771 (a)(6), (a)(8), and (a)(10), have been violated.

## IV.    CONCLUSION

Because (1) the Court lacks subject matter jurisdiction over Petitioners' claims that arise under the MSP, and (2) Petitioners have failed to demonstrate a violation of their rights under the CVRA, the government's motion to dismiss the Petition is GRANTED and the Petition is DISMISSED.

IT IS SO ORDERED.



s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  August 31, 2016

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 31, 2016.

s/Deborah Tofil
Case Manager